UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JONATHAN M.,

            Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

            Defendant.

CASE NO. C22-1655-BAT

**ORDER AFFIRMING THE COMMISSIONER AND DISMISSING THE CASE**

Plaintiff appeals the ALJ's decision finding her not disabled. Dkt. 17. She contends new evidence she presented to the appeals council shows "simple, routine 1 to 4 step tasks" is an "inconsistent" limitation that renders the residual functional capacity (RFC) determination and VE's testimony invalid. Plaintiff also contends the ALJ erred in finding she is not disabled absent substance abuse. For the reasons below, the Court **AFFIRMS** the Commissioner's final decision and **DISMISSES** the case with prejudice.

**DISCUSSION**

**A.    The ALJ's RFC and Hypothetical Question to the VE**

Plaintiff contends the ALJ's RFC determination, and the hypothetical question posed to the VE contain an inconsistency that nullifies the ALJ's step-five findings. The ALJ found Plaintiff has the RFC to perform "simple, routine 1 to 4 step tasks," Tr. 47, and subsequently

ORDER AFFIRMING THE COMMISSIONER AND DISMISSING THE
CASE - 1

asked the VE, based upon this limitation, about Plaintiff's past work. Tr. 94. The VE testified the "simple routine tasks" limitation would rule out past work, and the "one to four steps would also be problematic." *Id.* The VE was then asked whether he "could identify any jobs in the national economy" that would fit the hypothetical. *Id.*

The VE testified "hand packager," SVP 2; "salvage worker," SVP 2; and "marker," SVP 2 would fit the hypothetical. *Id.* Plaintiff's lawyer questioned the VE whether Plaintiff could perform the jobs identified if: (a) she had to punch "a time clock" and had no freedom to pick and choose her own schedule; and (b) she needed to work in isolation with almost no contact with others. Tr. 95-96. Also, Plaintiff questioned the VE about the basis of the number of jobs in the national economy. Tr. 96-97. Plaintiff did not ask the VE whether "simple, routine 1 to 4 step tasks," present inconsistent limitations or whether the limitations preclude SVP 2 work.

After the ALJ issued a decision finding Plaintiff not disabled, Plaintiff sought review in the Appeals Council and submitted new evidence from Dr. Joseph A. Moisen, a vocational expert. Tr. 7-33. Dr. Moisen avers:

> [T]he RFC to simple routine and 1-4 step is inconsistent and a vocational determination. Jobs that are 3-4 steps are usually semi-skilled or skilled jobs. A limitation to simple routine tasks generally does not allow for detailed work. A job with a reasoning level of 2 requires the ability to do detailed but uninvolved work. No matter how involved work may be at a reasoning level of 2 it is still detailed and beyond the ability of a person limited to simple routine tasks.

Tr. 10. Dr. Moisen avers hand packager is in a group of other jobs with 59 matching titles Tr. 11; salvage worker is in a group of 553 matching job titles, and marker is in a group of jobs with 38 matching titles. He avers each job requires the use of computers and computer software and the marker job requires preparation of documentation for contracts, transactions or regulatory

ORDER AFFIRMING THE COMMISSIONER AND DISMISSING THE
CASE - 2

compliance. *Id.* at 12. Dr. Moisen also opined each job is SVP of 4-6 under O*NET in contrast to SVP of 2 under the DOT.

Based upon Dr. Moisen's declaration, Plaintiff contends the RFC determination and VE testimony are erroneous because a simple routine limitation is not compatible with a 1 to 4 step task limitation, and further because Dr. Moisen opined jobs involving 3-4 steps exceed the "simple routine" limitation, and all SVP 2 jobs "are beyond the ability of a person limited to simple routine tasks." Tr. 10. The Commissioner disagrees arguing Plaintiff waived the argument and the new evidence does not support reversal. Dkt. 23 at 3-45.

Before considering the impact of the new evidence Plaintiff submitted, the Court finds the ALJ did not err in relying upon unchallenged VE testimony that a person limited to simple routine 1 to 4 step task jobs can perform the jobs the VE identified. The VE provided unchallenged testimony that Plaintiff could perform three jobs in the national economy with the limitation at issue, and the Ninth Circuit has not deemed this limitation is per se invalid.

Turning to the impact of the new evidence, the Commissioner argues Plaintiff forfeited the VE argument by failing to raise it when she appeared before the ALJ and instead raising it for the first time in the Appeals Council. However, because the Appeals Council received, reviewed, and made the new evidence part of the record, the Court rejects the Commissioner's waiver argument. *See White v. Kijakazi,* 44 F.4th 828, 837 (9th Cir. 2022) (Presenting new evidence to appeals council is not fatal where the evidence is made part of the record).

The Commissioner also argues the new evidence, in any event, does not undermine the ALJ's decision. The Commissioner argues *Terry v. Saul*, 998 F.3d 1010 (9th Cir. 2021) is controlling and forecloses reversal. In *Terry* the ALJ did not include a 6-hour standing and walking limitation in questioning the VE about whether Terry could perform medium work.

ORDER AFFIRMING THE COMMISSIONER AND DISMISSING THE
CASE - 3

After the ALJ found Terry not disabled, Terry presented new O*NET evidence to the Appeals Council and argued it showed the jobs identified by the VE required "more than six hours of standing or walking per day." *Id.* at 1013. Ostensibly, the new evidence showed the jobs the VE identified impose work demands that exceed "medium" work which limits standing or walking to approximately 6 hours. The Court of Appeals found the new evidence did not "necessarily establish either legal error or lack of substantial evidence to support the ALJ's disability determination." *Id.*

The Court of Appeals reasoned the VE's testimony that Terry could perform certain jobs was based upon her "unchallenged expertise and her reference to the Dictionary of Occupational (DOT) Titles," and thus substantial evidence supports the ALJ's determination. *Id.* The Court of Appeals further noted even if the evidence is susceptible to more than one reasonable interpretation, the Court must defer and uphold the Commissioner's interpretation.

The Court of Appeals in *Terry* affirmed the Commissioner using the phrase the new evidence "does not **necessarily** establish legal error or lack of substantial evidence to support the ALJ's disability determination." *Terry,* at 1013 (emphasis added). The phrase suggests that in some cases, the new evidence might **necessarily** compel reversal. Here, as in *Terry,* the new evidence does not necessarily establish reversible error.

On its face, there is nothing legally or factually deficient about the testimony the VE gave at the hearing before the ALJ. There is no deficiency because the ALJ may rely on VE testimony and DOT information. *See e.g. White v. Kijakazi,* 44 F.4th at 835 (Uncontradicted VE testimony about job numbers is inherently reliable and ordinarily sufficient to uphold an ALJ's step-five finding.); *Ede v. Commissioner of Social Security,* 2023 WL 1972177 at * 2 (E.D. Cal. Feb. 13, 2023) (Although the Circuit acknowledges certain criticisms of the DOT, the VE may rely upon

the DOT unless the testimony is so feeble and contradicted that it would fail the substantial evidence bar) (citation omitted); *see also Kalinch v. Kijakazi*, 2023 WL 3505513 at 7 (D. Nevada May 17, 2023). Here, the ALJ relied upon unchallenged VE testimony that relied upon the VE's expertise, and the DOT and the Court thus cannot say the ALJ's findings based upon this evidence are incorrect.

Because the ALJ properly relied upon the testimony of the VE, Plaintiff's argument for reversal hinges entirely upon the new evidence presented. Dr. Moisen suggests the DOT is obsolete and based upon O*NET evidence, the hypothetical presented to the VE is "inconsistent" and the jobs identified require the ability to perform SVP 4-6 and ability to use computers and computer software. Dr. Moisen thus opines Plaintiff cannot perform any of the jobs the VE identified.

The Court is constrained from simply adopting Dr. Moisen's opinions to establish the VE's testimony is so feeble or so contradicted that remand is required. As an initial matter, the Court declines to find any and all new evidence submitted after the ALJ issues a decision that contradicts the testimony of a VE automatically requires reversal. Rather, the Court examines whether the ALJ's decision is undermined by new evidence on a "case-case-basis taking into consideration all features of vocational expert's testimony as well as the rest of the administrative record. termination is supported by substantial evidence*." White v. Kijakazi,* 44 F.4th at 835 (citation omitted).

Applying this approach, the Court notes adopting Dr. Moisen's opinions would require the Court to categorically find the DOT is so obsolete that it cannot be the basis of VE testimony in this case, or ostensibly any other case. This is an untenable approach because the Ninth Circuit has indicated although the "DOT system upon which the SSA allows VEs to rely" is outdated,

ORDER AFFIRMING THE COMMISSIONER AND DISMISSING THE
CASE - 5

"we have characterized uncontradicted VE job-numbers testimony as "inherently reliable" and "ordinarily sufficient by itself to support an ALJ's step-five finding." *Id.*  The Court thus cannot say Dr. Moisen's opinions render the VE's testimony so "feeble" that remand is necessary in Plaintiff's case or in all other cases in which the VE relied upon the DOT.

The Court also finds the new evidence contradicts the VE's testimony but not in a manner that necessarily requires reversal. The Ninth Circuit in *Kilpatrick v. Kijakazi*, 35 F.4th 1187, 1193 (9th Cir. 2022) noted inconsistent new evidence does "not create a categorical obligation" that requires the Commissioner to resolve the inconsistency. In *Kilpatrick*, the claimant presented new evidence after the ALJ held the hearing but before the ALJ issued a decision. The Court applied the "significant probative evidence standard" in analyzing whether the ALJ erred, noting that while this standard was not applied "by name in *Buck*" that "specific articulation of the governing legal standard was unnecessary because the competing job numbers in that case easily qualified as significant probative evidence" where "the claimant's attorneys used the same computer software as the VE and yet generated vastly different job figures." *Id*. at 1194 (citation omitted). The Court in *Kilpatrick* observed that unlike "*Buck*, Kilpatrick's attorney did not replicate the VE's methodology and thus it is "not surprising Kilpatrick's different approach led to different results." *Id.* The *Kilpatrick* Court accordingly rejected the claimant's argument and affirmed the ALJ.

Although *Kilpatrick* concerned whether the ALJ erred in failing to address post-hearing new evidence presented to the ALJ, the Court finds its analysis applies here. The Ninth Circuit appears to have determined reversible error when new VE evidence using the same data and methodology is "too striking to ignore."  Hence in *Buck v. Berryhill,* 869 F.3d 1040, 1051 (9th Cir. 2017) the Court reversed where new evidence using same the same software showed great a

ORDER AFFIRMING THE COMMISSIONER AND DISMISSING THE
CASE - 6

discrepancy in the number of jobs in the national economy. Similarly, the Court in *White v. Kijakazi,* 44 F.4th at 837 reversed where the claimant presented new evidence contradicting the VE testimony about the number of jobs in the national economy using the same data source and methodology relied by the SSA at the hearing (the DOT and SkillTRAN)).

However, the Ninth Circuit has declined to find reversible error when new VE evidence is presented that relies upon a new methodology. As noted above, the Court in *Kilpatrick* rejected new evidence that did not replicate the VE's methodology noting how this type of evidence stands in contrast to the new evidence submitted in *Buck.* Additionally, as noted above, the Court in *Terry v. Saul*, 998 F.3d at 1013, declined to find new O*NET evidence necessarily established legal error or lack of substantial evidence. Plaintiff's new evidence is similar to the new evidence at issue in *Kilpatrick* and *Saul*; accordingly, consistent with these decisions, the Court concludes the new evidence does not necessarily undermine the ALJ's decision.

The Court further notes new evidence, based upon the same data and methods used by the VE, that contradicts the number of jobs that exist in the national economy is quantifiable evidence. This type of new evidence did not require the Ninth Circuit in *Buck* or *White* to engage in weighing the quality of the new evidence because the difference in the job numbers, alone and on their face, created a contradiction "too striking to ignore." Further the difference in the job numbers was not based upon a new methodology that required new weighing or evaluation. This is significant because a federal court that reviews the Commissioner's final decision under 42 U.S.C. § 405(g) normally cannot reweigh evidence or engage in new fact finding. The *Buck* and *White* decisions abide by this rule in that no weighing or fact finding was necessary. In contrast, the new evidence Plaintiff presents is not quantifiable evidence and instead requires the Court to engage in new fact finding and weigh an entirely new methodology in order to determine

ORDER AFFIRMING THE COMMISSIONER AND DISMISSING THE
CASE - 7

whether the new methodology is valid and supported, and if so "necessarily" contradicts the VE testimony and thus undermines the ALJ's decision. The Court declines to engage in new fact finding and to weigh, ab initio, new evidence because it is inappropriate to do so in this appeal.

In short, the Court finds the ALJ's initial step-five finding is free of legal error and supported by substantial evidence. The Court declines to make new factual findings on appeal in the first instance that the new evidence, which relies upon new data and a new methodology, renders the ALJ's findings invalid. The Court notes that if the VE had testified that under the DOT and O*NET Plaintiff could perform the jobs identified, the new evidence, would be akin to the evidence presented in *Buck* and *White*, and reversal might be appropriate. But, this did not occur here and the Court accordingly declines to reverse the ALJ's decision based upon Plaintiff's argument the new evidence she presented establishes simple and routine tasks and 1-4 step instructions are inconsistent and thus invalid limitations.

### B.     Drug Abuse and Alcoholism (DAA) Analysis

The ALJ conducted a DAA analysis to determine whether Plaintiff's disabling symptoms remain absent use of drugs or alcohol. 20 C.F.R. §§ 404.1535, 416.935. The DAA analysis requires the ALJ to identify disability under the five-step procedure and then conduct a DAA analysis to determine whether substance abuse is material to disability. *Bustamante v. Massanari*, 262 F.3d 949, 955 (9th Cir. 2001). If the remaining limitations without DAA would still be disabling, then the claimant's drug addiction or alcoholism are not contributing factors material to disability. But, if the remaining limitations are not be disabling without DAA, then the claimant's substance abuse is material and benefits must be denied. *Parra v. Astrue*, 481 F.3d 742, 747–48 (9th Cir. 2007). Plaintiff bears the burden of proving that DAA is not a contributing factor material to disability. *Id*. at 748. Insufficient evidence as to the issue of materiality cannot

satisfy a plaintiff's burden of proving his substance use is not a material factor. *Id*. 749–50. If a plaintiff cannot establish that his DAA is not material, then the ALJ repeats the five-step sequential evaluation process for determining whether plaintiff is disabled, absent the limiting effects of DAA. *Id*. at 747–50.

Plaintiff does not challenge the entirety of the ALJ's DAA analysis and instead argues the ALJ erred by finding if she stopped using marijuana she would not be disabled. Plaintiff contends her mental health limitations improved without the use of marijuana but not to the point of "non-disability." Dkt. 17 at 8. In support, she argues in May 2019 she went to the emergency room and was diagnoses with suicidal ideation, engaging in disturbing behavior, and that cannabis was detected on her drug screen. *Id.* (citing Tr. 437-53). In June 2019, Plaintiff attended treatment and presented with rapid speech, depression, and made a call about her childhood and feeling depressed. *Id.* (citing TR. 492).

In October 2019, Plaintiff was assessed and reported she stopped using marijuana two weeks earlier and was feeling suicidal. *Id.* (citing Tr. 471). In November 2019, Plaintiff was evaluated by Dr. Pratt. She reported ceasing marijuana use in September with several relapses. She presented with odd thinking patterns and perception. The doctor noted Plaintiff's symptoms are less severe without marijuana use but do not go into remission. *Id* at 9 (citing Tr. 544-45).

In May 2020, Plaintiff reported suicidal ideation and anxiety despite no reported marijuana use. *Id.* (citing Tr. 675-80). In September 2020, Plaintiff claimed her mental illness was like a "cult leader" and in October she reported feeling she was anxious about failing again. Tr. 1141.

Plaintiff contends the record is thus contrary to the ALJ's determination that her mental health improved to the point of non-disability without marijuana use. *Id.* Plaintiff acknowledges

her symptoms "waxed and waned" but submits this is not a basis to conclude her remaining limitations are not disabling.

The Commissioner contends although the ALJ found substance addiction disorder is severe at step two, the ALJ correctly found Plaintiff cannot perform gainful work if her marijuana use is considered with her other impairments but can perform gainful work if her marijuana use is not included. The Commissioner argues the record supports the ALJ's determination. The Commissioner contends the ALJ correctly found marijuana caused Plaintiff to be delusional, that she was using marijuana when she went to the emergency room and the record plainly shows marijuana affected Plaintiff's concentration, focus and impulse control.

The Commissioner notes the severity of these symptoms diminished when Plaintiff was not using marijuana. The Commissioner notes Plaintiff reported to Dr. Daniel Pratt, Psy.D. her delusions were "less severe" when she abstained from marijuana and the doctor noted overelaborate speech and anxious mood but many other "normal" behaviors. The Commissioner also contends the ALJ's finding is free of error because Plaintiff could handle "self-care independently" and was able to go places, articulate and had appropriate grooming. The Commissioner further contends the ALJ discounted Plaintiff's testimony about her mental symptoms, and Plaintiff has not challenged the ALJ's determination.

And lastly, the Commissioner argues Plaintiff fails to show her co-occurring mental disorders are disabling without marijuana use or that the ALJ impermissibly "cherry-picked" and thus disregarded how mental symptoms can wax and wane. The Commissioner contends Plaintiff thus argues for her own interpretation of the evidence rather than showing the ALJ's interpretation is unreasonable or unsupported.

While the record is susceptible to more than one reasonable interpretation, the Court cannot say the ALJ's interpretation regarding DAA is unreasonable. The ALJ noted Plaintiff indicated she had cannabis induced symptoms in 2006-2008; Her doctors told her schizoaffective disorder can be exacerbated by cannabis use; Plaintiff was positive for THC when she had police interaction and went to the ER in May 2019; When Plaintiff complained of concentration and impulse problems she was using marijuana; And that until late October or November 2019 Plaintiff indicated her substance use was substantial. Tr. 48. The ALJ noted in 2019, Plaintiff had a three-week contract as a web developer and although it is unclear why the contract terminated, Plaintiff thinks it was because she could not work at the expected pace. Tr. 52.

The ALJ also noted Plaintiff started working full-time in 2021. *Id.* The ALJ reviewed the record and noted Plaintiff's treatment records show minimal psychiatric observations and are inconsistent with allegations of disabling mental health symptoms. Tr. 53. The ALJ noted during the height of Plaintiff's marijuana use, Plaintiff struggled but when she reduced or stopped using marijuana, she made good progress in treatment with reduced symptoms. *Id*.

The ALJ further found Plaintiff's mental status exams show she does not have disabling mental health problems as shown by Dr. Pratt's findings. Tr. 53-54. The ALJ observed the severity of Plaintiff's mental symptoms are situational with heightened symptoms occurring when she had marital, financial or loss of a relative. *Id* at 54.

While Plaintiff disagrees as to whether the ALJ's interpretation the above record supports the ALJ's DAA determination, the Court cannot say the ALJ's determination is unreasonable or not supported by the record. The Court is thus constrained from overturning the ALJ's determination and accordingly affirms the ALJ's DAA findings.

For the foregoing reasons, the Commissioner's decision is **AFFIRMED,** and this case is **DISMISSED** with prejudice.

DATED this 7th day of July, 2023.

_____
BRIAN A. TSUCHIDA
United States Magistrate Judge